UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



FILED
JAN 17 2014
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**JAMES WALSH,**

    Plaintiff,

v.                                     Civil Action No. 3:14CV043

**PORTFOLIO RECOVERY ASSOCIATES, LLC.,**

SERVE:    Corporation Service Company
              Bank of America Center, 16th Floor
              1111 East Main Street
              Richmond, VA 23219

**EXPERIAN INFORMATION SOLUTIONS, INC.**

SERVE:    David N. Anthony, Registered Agent
              Troutman Sanders, LLP
              1001 Haxall Point
              Richmond, VA 23219

    Defendants.

## COMPLAINT

COMES NOW the Plaintiff, **JAMES WALSH**, (hereafter the "Plaintiff"), by counsel, and for his Complaint against the Defendants, he alleges as follows:

## PRELIMINARY STATEMENT

1. This action is brought for actual, statutory and punitive damages, costs and attorney's fees pursuant to the Federal Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 et. seq. and the common law tort of defamation.

## JURISDICTION

2. The jurisdiction of this Court is conferred by 15 U.S.C. §1681p. Venue is proper as Defendants maintain their registered offices within the boundaries for the Eastern District of Virginia, Richmond Division and significant parts of the Plaintiff's claim occurred in Virginia.

## PARTIES

3. The Plaintiff, **JAMES WALSH**, is a natural person and resident of Virginia. Plaintiff, at all times relevant hereto was a "consumer" and "person" protected by the FCRA.

4. Upon information and belief, Defendant, **PORTFOLIO RECOVERY ASSOCIATES, LLC**, (hereinafter "*Portfolio*") is a limited liability company doing business in the State of Virginia through its registered offices in Richmond, Virginia, as a debt collector and "furnisher" as governed by the FCRA.

5. Upon information and belief, **EXPERIAN INFORMATION SOLUTIONS, INC.** ("*Experian*") is a corporation authorized to do business in the State of Virginia through its registered agent office.

6. Upon information and belief, *Experian* is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f). Upon information and belief, *Experian* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

7. Upon information and belief, *Experian* disburses such consumer reports to third parties under contract for monetary compensation.

2

## FACTS

8. In January 2002, Plaintiff left his former employment with Sandbridge Partners. During the time he was employed with Sandbridge Partners, *aka Sandbridge Asset Management*, Mr. Walsh was an authorized user of two Chase business accounts. Mr. Walsh was not a personal guarantor on the Chase accounts. At the time Mr. Walsh left the business in January 2002, the Chase accounts were paid in full. Mr. Walsh also received an Indemnity Agreement dated January 7, 2002 with regard to Sandbridge Partners, holding him harmless for any debts and liabilities of Sandbridge Partners.

9. Upon information and belief in September, 2005, Mr. Walsh disputed the derogatory reporting of two Chase business credit card accounts with Equifax, Trans Union and Experian. As a result of Mr. Walsh's disputes, the Chase accounts were deleted from his credit files.

10. In March 2012, Mr. Walsh received a collection letter from *Portfolio* regarding a former Chase business account.

11. Thereafter Mr. Walsh obtained a copy of his tri-merge consumer credit report and learned that that Equifax, Trans Union and *Experian* were reporting a *Portfolio* collection debt in an amount in excess of $7,000.00 *(the Portfolio Reporting)*.

12. The *Portfolio* Reporting was inaccurate. Mr. Walsh was never personally liable for the repayment of this corporate debt.

13. Mr. Walsh has disputed the *Portfolio* collection account with Equifax, Trans Union and *Experian* and/or other Consumer Reporting Agencies multiple times since February, 2012.

14. As a result of Mr. Walsh's dispute, Equifax and Trans Union deleted the *Portfolio* collection from his credit file.

15. On or about March 22, 2012, *Experian* responded to Mr. Walsh's dispute and

3

Case 3:14-cv-00043-JAG  Document 1  Filed 01/17/14  Page 4 of 16 PageID# 4

advised that the *Portfolio* account had been updated as a result of his dispute. The *Portfolio* collection account was reporting derogatorily as $7,716.00 past due.

16. On or about November 14, 2012, Mr. Walsh forwarded a second dispute letter regarding the *Portfolio* collection account to *Experian*. Mr. Walsh advised that the underlying Chase account had been opened by business in which he was involved. Mr. Walsh advised that he was only a authorized user on the account, and that he had never agreed to be personally liable for the business debt. Plaintiff further advised that when he left the business in January 2002, the account was paid in full, and that he never used the account again. However, despite this, Chase had allowed his former business partner to use the account, without his knowledge and consent. In addition, the account is reporting as opened in March 2009, which is false. The underlying Chase account had been closed on or about 2004.

17. On or about November 30, 2012, *Experian* responded to Mr. Walsh's dispute and advised that it was responding to a request to verify items on his credit report, however, it had already investigated the information and the credit grantor had verified its accuracy. Mr. Walsh also received a Correction Summary dated November 30, 2012 that advised that the other items he disputed were not currently reporting on his credit report. However, the *Portfolio* account was in fact, still reporting as a past due collection account in the amount of $6,553.00, as of November 2012.

18. *Experian* received, but ignored Mr. Walsh's disputes and did refuse to delete the derogatory account from Mr. Walsh's credit file.

19. *Experian* had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the derogatory account.

20. After receiving Mr. Walsh's notice of the inaccuracy and since on or about March

advised that the *Portfolio* account had been updated as a result of his dispute. The *Portfolio* collection account was reporting derogatorily as $7,716.00 past due.

16. On or about November 14, 2012, Mr. Walsh forwarded a second dispute letter regarding the *Portfolio* collection account to *Experian*. Mr. Walsh advised that the underlying Chase account had been opened by business in which he was involved. Mr. Walsh advised that he was only a authorized user on the account, and that he had never agreed to be personally liable for the business debt. Plaintiff further advised that when he left the business in January 2002, the account was paid in full, and that he never used the account again. However, despite this, Chase had allowed his former business partner to use the account, without his knowledge and consent. In addition, the account is reporting as opened in March 2009, which is false. The underlying Chase account had been closed on or about 2004.

17. On or about November 30, 2012, *Experian* responded to Mr. Walsh's dispute and advised that it was responding to a request to verify items on his credit report, however, it had already investigated the information and the credit grantor had verified its accuracy. Mr. Walsh also received a Correction Summary dated November 30, 2012 that advised that the other items he disputed were not currently reporting on his credit report. However, the *Portfolio* account was in fact, still reporting as a past due collection account in the amount of $6,553.00, as of November 2012.

18. *Experian* received, but ignored Mr. Walsh's disputes and did refuse to delete the derogatory account from Mr. Walsh's credit file.

19. *Experian* had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the derogatory account.

20. After receiving Mr. Walsh's notice of the inaccuracy and since on or about March

2012, *Experian* prepared and published to third parties multiple inaccurate consumer reports about Mr. Walsh that contained the inaccurate derogatory *Portfolio* collection account.

21. *Experian* received Mr. Walsh's numerous disputes, but in each case wholly and entirely failed to conduct the reinvestigations required by law. Instead, *Experian* merely "parroted" the information dictated to it by *Portfolio*.

22. Upon information and belief, Mr. Walsh alleges that on one or more occasions *Experian* forwarded Mr. Walsh's disputes to *Portfolio*. Upon information and belief, *Portfolio* was provided notice of Mr. Walsh's disputes and despite this notice, failed and refused to investigate and correct its inaccurate reporting.

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681e(b)
## (EXPERIAN)

23. Mr. Walsh and incorporates paragraphs 1 through 22 above as if fully set out herein.

24. *Experian* violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Mr. Walsh's credit report and credit file it published and maintained concerning Mr. Walsh.

25. As a result of the conduct, actions and inactions of *Experian*, Mr. Walsh suffered actual damages including without limitation, by example only and as described herein on Mr. Walsh's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

26. *Experian*'s conduct, actions and inactions were willful, rendering *Experian* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Experian* was negligent entitling Mr. Walsh to recover under 15 U.S.C.

§1681o.

27. Mr. Walsh is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(1)
### (EXPERIAN)

28. Mr. Walsh realleges and incorporates paragraphs 1 through 28 above as if fully set out herein.

29. *Experian* violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Mr. Walsh's credit file.

30. As a result of the conduct, actions and inactions of *Experian* Mr. Walsh suffered actual damages including without limitation, by example only and as described herein on Mr. Walsh's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

31. *Experian*'s conduct, actions and inactions were willful, rendering *Experian* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Experian* was negligent entitling Mr. Walsh to recover under 15 U.S.C. §1681o.

32. Mr. Walsh is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681i(a)(2)
## (EXPERIAN)

33. Mr. Walsh realleges and incorporates paragraphs 1 through 32 above as if fully set out herein.

34. *Experian* violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide lawful notification of Ms. Walsh's dispute to *Portfolio* and by failing to include all relevant information regarding Mr. Walsh's disputes.

35. As a result of the conduct, actions and inactions of Defendant, *Experian*, Mr. Walsh suffered actual damages including without limitation, by example only and as described herein on Mr. Walsh's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

36. *Experian*'s conduct, actions and inactions were willful, rendering *Experian* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Experian* was negligent entitling Mr. Walsh to recover under 15 U.S.C. §1681o.

37. Mr. Walsh is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681i(a)(4)
## (EXPERIAN)

38. Mr. Walsh realleges and incorporates paragraphs 1 through 37 above as if fully set out herein.

39. *Experian* violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to

review and consider <u>all</u> relevant information submitted by Mr. Walsh.

40. As a result of the conduct, actions and inactions of *Experian*, Mr. Walsh suffered actual damages including without limitation, by example only and as described herein on Mr. Walsh's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

41. *Experian's* conduct, actions and inactions were willful, rendering *Experian* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Experian* was negligent entitling Mr. Walsh to recover under 15 U.S.C. §1681o.

42. Mr. Walsh is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681i(a)(5)(A)
## (EXPERIAN)

43. Mr. Walsh realleges and incorporates paragraphs 1 through 42 above as if fully set out herein.

44. *Experian* violated 15 U.S.C. §1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed inaccurate item of information from Mr. Walsh's credit file or modify the item of information upon a lawful reinvestigation.

45. As a result of the conduct, actions and inactions of *Experian*, Mr. Walsh suffered actual damages including without limitation, by example only and as described herein on Mr. Walsh's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

46. *Experian*'s conduct, actions and inactions were willful, rendering *Experian* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Experian* was negligent entitling Mr. Walsh to recover under 15 U.S.C. §1681o.

47. Mr. Walsh is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681s-2(b) (1)(A)
## (PORTFOLIO)

48. Mr. Walsh realleges and incorporates paragraphs 1 through 47 above as if fully set out herein.

49. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, *Portfolio* violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Mr. Walsh's disputes.

50. When Mr. Walsh mailed his disputes to the consumer reporting agencies, they use a dispute system named "e-Oscar", which has been adopted by the credit reporting agencies and their furnisher customers such as *Portfolio*. It is an automated system and the procedures used by the CRA's are systemic and uniform.

51. When *Experian* receives a consumer dispute, it (usually via an Indian outsource vendor), translates that dispute into an "ACDV" form.

52. The ACDV form is the method by which *Portfolio* has elected to receive consumer disputes pursuant to 15 U.S.C. §1681i(1).

53. It is extremely rare – certainly less than 1% of the time – that *Portfolio* will

receive a consumer's dispute sent through the CRA's other than through the e-Oscar system.

54. On information and belief, Mr. Walsh alleges that to date *Portfolio* has never complained to the CRA's about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

55. When *Portfolio* receives a consumer dispute ACDV form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

56. Based on the manner in which *Experian* responded to Mr. Walsh's disputes, representing that *Portfolio* had "verified" the supposed accuracy of its reporting, Mr. Walsh alleges that *Experian* did in fact forward Mr. Walsh's dispute via an ACDV to *Portfolio*.

57. *Portfolio* understood the nature of Mr. Walsh's dispute when it received the ACDV from *Experian*.

58. When *Portfolio* received the ACDV from *Experian*, *Portfolio* as well could have reviewed its own system and determined that Mr. Walsh was not a personal guarantor on the underlying debt it was trying to collect.

59. Notwithstanding the above, *Portfolio* followed a standard and systemically unlawful process when they received the ACDV dispute. Basically, all *Portfolio* does is review their own internal computer screen for the account and repeat back to the ACDV system the same information *Portfolio* had already reported to *Experian*.

60. When *Portfolio* receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

61. As a result of *Portfolio's* violations of 15 U.S.C. §1681s-2(b)(1)(A), Mr. Walsh suffered actual damages, including but not limited to: loss of credit, damage to reputation,

embarrassment, humiliation and other mental and emotional distress.

62. The violations by *Portfolio* were willful, rendering *Portfolio* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

63. The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

64. *Portfolio* was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Mr. Walsh's dispute.

65. *Portfolio* has been sued numerous times for its alleged failures to conduct lawful FCRA investigations.

66. On information and belief, Mr. Walsh alleges that the procedures followed regarding his FCRA disputes through e-Oscar were the procedures that *Portfolio* intended their employees or agents to follow.

67. On information and belief, Mr. Walsh alleges that *Portfolio*'s employees or agents did not make a mistake (in the way in which he or she followed *Portfolio*'s procedures) when he or she received, processed and responded to the *Experian* ACDVs.

68. On information and belief, Mr. Walsh alleges that *Portfolio* have not materially changed its FCRA investigation procedures after learning of their failures in this case.

69. In the alternative, *Portfolio* was negligent, which entitles Mr. Walsh to recovery under 15 U.S.C. §1681o.

70. Mr. Walsh is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Portfolio* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT SEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681s-2(b)(1)(B)
## (PORTFOLIO)

71. Mr. Walsh realleges and incorporates all other factual allegations set forth in the Complaint (Particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

72. On one or more occasions within the past two years, by example only and without limitation *Portfolio* violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by *Experian*.

73. As Mr. Walsh detailed in Count Six, *Portfolio* has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

74. *Portfolio* is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar

75. *Portfolio* does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

76. As a result of *Portfolio's* violations of 15 U.S.C. §1681s-2(b)(1)(B), Mr. Walsh suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

77. The violations by *Portfolio* were willful, rendering *Portfolio* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Portfolio* was negligent, which entitles Mr. Walsh to recovery under 15 U.S.C. §1681o.

78. Mr. Walsh is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Portfolio* in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n and §1681o.

## COUNT EIGHT: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681s-2(b) (1)(C) and (D)
## (PORTFOLIO)

79. Mr. Walsh realleges and incorporates all other factual allegations set forth in the Complaint. (Particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

80. On one or more occasions within the past two years, by example only and without limitation, *Portfolio* violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the *Portfolio* representations within Mr. Walsh's credit files with *Experian* without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

81. Specifically, *Portfolio* failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to *Experian*.

82. On information and belief, Mr. Walsh alleges that *Portfolio* rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

83. Mr. Walsh's dispute was, at a minimum, bone fide.

84. As a result of *Portfolio's* violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Mr. Walsh suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

85. The violations by *Portfolio* were willful, rendering *Portfolio* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

86. *Portfolio* was aware of the *Saunders v. B.B.&T* FCRA decision by the Fourth Circuit when they followed the ACDV procedures used regarding Mr. Walsh's dispute.

13

87. On information and belief, the Mr. Walsh alleges that the procedures followed regarding Mr. Walsh's FCRA disputes through e-Oscar were the procedures that *Portfolio* intended their employees or agents to follow.

88. On information and belief, the Mr. Walsh alleges that *Portfolio*'s employees or agents did not make a mistake (in the way in which he or she followed *Portfolio*'s procedures) when he or she received, processed and responded to *Experian's* ACDVs and did not include the XB code in the CCC field.

89. On information and belief, Mr. Walsh alleges that *Portfolio* has not materially changed their FCRA investigation procedures regarding the CCC field in ACDVs after learning of their failures in this case.

90. In the alternative, *Portfolio* was negligent, which entitles Mr. Walsh to recovery under 15 U.S.C. §1681o.

91. Mr. Walsh is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Portfolio* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT NINE: DEFAMATION
## (PORTFOLIO)

92. Mr. Walsh repeats and re-alleges every allegation above as if set forth herein in full.

93. Within the context of the allegations in Count Nine, *Portfolio* did not act as a consumer reporting agency nor a user of Mr. Walsh's consumer report. *Portfolio* did not use his consumer report or take adverse action based on the report.

94. In addition to its violations of the Fair Credit Reporting Act, *Portfolio* made multiple false and defamatory statements that are not governed by 15 U.S.C. §1681s-2. *Portfolio*

published the false statements that Mr. Walsh was legally responsible for a debt to *Experian* that had gone into collection and which had not been paid. *Portfolio* made these defamatory statements to *Experian* and through *Experian* to all of Mr. Walsh's potential lenders on multiple occasions.

95. These false and defamatory statements were made with legal malice and a willful intent to injure Mr. Walsh by placing false and derogatory information in his credit reports. *Portfolio* had reason to know, both by virtue of information communicated to it by Mr. Walsh, through his credit reporting disputes and by its own records, that Mr. Walsh was not personally responsible for the collection debt it was trying to collect and that it reported to third parties. Further, *Portfolio* willfully adopted procedures that wholly ignored the demands of Mr. Walsh, and other consumers generally, that inaccurate information should be removed from their credit files.

96. As a result of *Portfolio*'s conduct, actions and inaction, Mr. Walsh suffered various types of damage as set forth herein, including specifically, loss of credit, the loss of the ability to purchase and benefit from a line of credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

97. These defamations were malicious, willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Mr. Walsh, so as to justify an award of punitive damages against *Portfolio* in an amount to be determined by the Court.

WHEREFORE Mr. Walsh demands judgment for compensatory and statutory damages against the Defendants, jointly and severally; for his attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

JAMES A. WALSH

By: _____
        Of Counsel

LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
E-mail: lenbennett@clalegal.com

SUSAN M. ROTKIS, VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
E-mail: srotkis@clalegal.com

THOMAS R. BREEDEN
THOMAS R. BREEDEN, P.C.
10326 Lomond Drive
Manassas, VA 20109
(703) 361-9277 – Telephone
(703) 257-2259 – Facsimile
E-mail: trb@tbreedenlaw.com

*Counsel for Plaintiff*